UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOLORES LUCERO, | No. 2:24-cv-02854-DC-SCR |
| Plaintiff, | ORDER AND FINDINGS AND RECOMMENDATIONS |
| v. | |
| OAK RUN ELEMENTARY SCHOOL DIST. et al., | |
| Defendants. | |

Plaintiff is proceeding pro se in this matter, which is referred to the undersigned pursuant to Local Rule 302(c)(21). Before the Court are Defendants' Motions to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 21 & 28. The parties filed opposition and reply briefs, and the Court heard oral argument on February 27, 2025. Plaintiff also filed several motions related to the briefing on the motions to dismiss and a motion for a gag order that will be addressed herein. ECF Nos. 30, 32, 36, 46, & 62. The Court recommends that the motions to dismiss be GRANTED for the reasons set forth herein, and Plaintiff be granted leave to amend only as to certain claims and only as to a single defendant.

////

1

## I.    Background and Procedural History

Plaintiff filed this action on October 16, 2024, alleging claims under 42 U.S.C. § 1983 against an elementary school district, its principal, and Board of Trustees (the "Board").  ECF No. 1.  Plaintiff alleges that on December 4, 2023, she filed six formal complaints about Superintendent/Principal Misti Livingston ("Livingston") but the "Board of Trustees failed to act."  *Id.* at 2.  Plaintiff contends she filed additional complaints about Livingston on December 22, 2023 "for defamatory statements," but also alleges that in January 2024 she "discovered" that Livingston had made defamatory statements.  *Id.* at 3.  In January 2024, Plaintiff also filed a complaint about a teacher that she alleges was "ignored" by the Board.  On January 22, 2024, Livingston allegedly threatened to "destroy" Plaintiff.  *Id.*  In March 2024, Plaintiff was barred from attending school board meetings "under false accusations," and in May 2024, Plaintiff filed a criminal complaint against Livingston.  *Id.*

Plaintiff's complaint contains three counts: 1) First Amendment retaliation; 2) Fourteenth Amendment due process; and 3) Fourteenth Amendment equal protection.  *Id.* at 4-5.  Plaintiff seeks declaratory and injunctive relief, various forms of damages, and attorney's fees and costs.  *Id.* at 6.

On January 2, 2025, Defendants Oak Run Elementary School District ("Oak Run") and its board member defendants, Shawn Hill, Deatra Masala, Candace Maurer, and Luke Pearson (collectively "Board Members"), filed a motion to dismiss which argues failure to state a claim under Rule 12(b)(6) and immunity.  ECF No. 21-1.  On January 16, 2024, Livingston, represented by separate counsel, filed a motion to dismiss which also argues for dismissal under Rule 12(b)(6) and based on immunity.

## II.    Legal Standards Under Rule 12(b)(6)

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to

relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true all well-pleaded factual allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Walker v. Fred Meyer, Inc.*, 953 F.3d 1082, 1086 (9th Cir. 2020). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *Paulsen v. CNF, Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

In ruling on a motion to dismiss under Rule 12(b)(6), the court is permitted to consider material that is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiffs' complaint necessarily relies on them, and matters of public record. *See Lee v. City of Los Angeles*, 250 F.3d. 668, 688–89 (9th Cir. 2001).

### III.    Oak Run and the Board Members' Motion to Dismiss (ECF No. 21)

#### A.  Eleventh Amendment Immunity

Oak Run and the Board Members (the "Board Defendants") argue that this entire action is barred by Eleventh Amendment immunity. ECF No. 21-1 at 4. The Board Defendants argue that California school districts are arms of the state that enjoy Eleventh Amendment immunity and that such immunity also extends to a school district's governing board. *Id.* They rely on *Belanger v. Madera Unified School Dist.*, 963 F.2d 248 (9th Cir. 1992).

3

.1          In *Belanger*, the Ninth Circuit stated, "California public schools have long been treated as

2    state agencies under California law." *Id.* at 253. It is further "well-settled that providing public

3    education is a state function." *Id.* The Ninth Circuit concluded that a California school district is

4    an agent of the state that performs state governmental functions and is immune from suit under

5    the Eleventh Amendment. *Id.* at 254. The Ninth Circuit has since reiterated *Belanger*'s holding

6    in the wake of legislative changes to school funding formulas. *See Sato v. Orange Cnty. Dep't of*

7    *Educ.*, 861 F.3d 923, 928 (9th Cir. 2017) (reiterating that agencies of the state are immune under

8    the Eleventh Amendment from private damages or suits for injunctive relief).

9          Plaintiff relies on *Mt. Healthy City Sch. Dist. Bd of Educ. v. Doyle*, 429 U.S. 274 (1977)

10   ("*Mt. Healthy*"), for the proposition that school districts are not entitled to immunity when sued

11   for constitutional violations under § 1983. *See* ECF No. 23 at 4. *Mt. Healthy* found that under

12   Ohio law, an Ohio school district is not an "arm of the state" entitled to Eleventh Amendment

13   immunity. 429 U.S. at 280. It did not purport to hold that school districts are never arms of the

14   state. Instead, the Supreme Court explained that the immunity question may vary depending on

15   how state law structures school districts. *See id.* ("The answer depends, at least in part, upon the

16   nature of the entity created by state law."). As noted above, Ninth Circuit precedent holds that

17   school districts in California possess Eleventh Amendment immunity. Oak Run is immune from

18   suit.

19         The Board Members rely on *Brouillette v. Montague Elementary School Dist.*, 2014 WL

20   2453036 (E.D. Cal. May 30, 2014) to argue that they too should be found immune from suit

21   under the Eleventh Amendment. Therein, the court stated: "And to the extent that a school

22   board's authority is coextensive with the authority of a school district under state law, a school

23   board in California is likewise a state agency for purposes of the Eleventh Amendment." *Id.* at

24   *2. The Board Members contend that "they are all sued exclusively in their capacities as Board

25   Members" and entitled to immunity form the § 1983 claims. ECF No. 21-1 at 4. The Eleventh

26   Amendment bars claims for damages against state officials sued in their official capacity. *Lewis*

27   *v. Clarke*, 581 U.S. 155, 163 (2017) (citing *Kentucky v. Graham*, 473 U.S. 159, 167 (1985)). The

28   ////

4

.1 Court agrees that, consistent with *Brouillette*, the Eleventh Amendment immunizes the Board

2 Members against suit for damages in their official capacities.

3       A state official defendant may nevertheless be sued for prospective injunctive relief in

4 their official capacity. *See Lacano Investments, LLC v. Balash*, 765 F.3d 1068, 1072 (9th Cir.

5 2014) (citing *Ex parte Young*, 209 U.S. 123 (1908)). A state official defendant may also be sued

6 for damages in their individual capacity. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991). Plaintiff has

7 not just sued the Board as an entity, but rather has named four members and states they are "sued

8 in their individual and official capacities." ECF No. 1 at 2.

9       However, there are no factual allegations as to the actions of any individual Board

10 Member. The allegations are that the Oak Run Board collectively failed to act on her complaints.

11 *Id.* at 2-3. Plaintiff also makes allegations about being barred from meetings and about

12 retaliation, but does not identify which, if any, of the Board Members were allegedly responsible.

13 Accordingly, even though Eleventh Amendment immunity does not bar Plaintiff's action for

14 prospective injunctive relief against the Board Members in their official capacities or for damages

15 against them in their individual capacities, she has failed to show their personal involvement or

16 that there was a "sufficient causal connection" between their conduct and the alleged violations at

17 issue. *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).

18                **B. Failure to State a Claim.**

19       The Board Defendants also argue that Plaintiff has failed to plead sufficient facts to

20 support her claims. Defendants point out that Plaintiff has not alleged any facts about her

21 "complaints" such as "what they involved, how they were made, or any other information to

22 determine whether the speech is protected." ECF No. 21-1 at 9.

23                   **1. Retaliation**

24       The elements of a First Amendment retaliation claim vary depending on the context. In a

25 generic case like this one that does not involve a prison or employment-related retaliation, a

26 plaintiff must show: 1) she engaged in a constitutionally protected activity; 2) the defendant's

27 actions would chill a person of ordinary firmness from continuing to engage in protected conduct;

28 an 3) the protected activity was a substantial or motivating factor in the defendant's conduct.

.1    *Sampson v. County of Los Angeles*, 974 F.3d 1012, 1019 (9th Cir. 2020).  A plaintiff "must

2    establish that defendants' retaliatory animus was the but-for cause of her injury, meaning that the

3    adverse action against her would not have been taken absent retaliatory motive."  *Id.* (internal

4    citations and quotations omitted).

5            Plaintiff's allegations as to Count I are a legal conclusion.  She asserts: "Defendants,

6    acting under color of state law, violated Plaintiff's First Amendment right to free speech by

7    retaliating against her for speaking out on matters of public concern."  ECF No. 1 at 4.  However,

8    Plaintiff elsewhere alleges that she filed complaints about misconduct among Oak Run officials

9    and staff, which qualifies as protected speech.  *See, e.g., White v. Lee,* 227 F.3d 1214, 1227 (9th

10    Cir. 2000) (finding that speaking out at zoning board meetings is protected speech); *Pinard v.*

11    *Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 767 (9th Cir. 2006) (finding that students' comments

12    concerning their coach at school meeting to be protected speech).  Plaintiff has thus pleaded facts

13    that meet the first prong of the retaliation standard.

14            However, Plaintiff fails to allege conduct by the Board Defendants that would chill an

15    ordinary person from continuing to speak up about these issues.  "Because it would be unjust to

16    allow a defendant to escape liability for a First Amendment violation merely because an

17    unusually determined plaintiff persists in his protected activity, we conclude that the proper

18    inquiry asks whether an official's acts would chill or silence a person of ordinary firmness from

19    future First Amendment activities."  *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283,

20    1300 (9th Cir. 1999) (citation and quotation omitted).  Failing to investigate a complaint is plainly

21    not sufficiently chilling.  *See Minn. State Bd. for Comm. Colls. v. Knight*, 465 U.S. 271, 285

22    (1984) ("Nothing in the First Amendment or in this Court's case law interpreting it suggests that

23    the rights to speak, associate, and petition require government policymakers to listen or respond

24    to individuals' communications on public issues.").  Nor would being banned from school board

25    meetings chill a person of ordinary firmness from continuing to speak on issues of alleged

26    malfeasance involving a school district.  "The Ninth Circuit has held that arrest, *Lacey v.*

27    *Maricopa County*, 693 F.3d 896, 917 (9th Cir. 2012), threat of arrest, *Reed v. Lieurance*, 863 F.3d

28    1196, 1212 (9th Cir. 2017), search and seizure, *Skoog v. Cnty. of Clackamas*, 469 F.3d 1221,

.1    1232 (9th Cir. 2006) … booking and jailing, *Ford*, 706 F.3d at 1194 (9th Cir. 2013), and even

2    prolonged administrative investigations, *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000),

3    would chill a person of ordinary firmness." *Maya v. Cnty. of San Bernardino*, No. 19-cv-1871

4    JGB (KKx), 2023 WL 4383344, *41 (C.D. Cal. June 1, 2023).  What these examples have in

5    common is some coercive or otherwise unpleasant government procedure being used against an

6    individual.  While there may be instances where something less will suffice to establish an

7    adequate chill, merely being unable to speak at a school board meeting is insufficient.

8    Accordingly, Plaintiff has failed to state a retaliation claim against the Board Defendants.

9                                    **2.  Due Process**

10    As to Plaintiff's due process claim in Count II, Defendants argue it is unclear whether

11    Plaintiff is attempting to assert a procedural or substantive due process claim.  Plaintiff's due

12    process claim appears to be based on two things: 1) failing to investigate her complaints, and 2)

13    barring her from school board meetings without providing process.  ECF No. 1 at 4.  The

14    procedural guarantees of the Fifth and Fourteenth Amendments' Due Process Clauses apply only

15    when a constitutionally protected liberty or property interest is at stake.  *See Ingraham v. Wright*,

16    430 U.S. 651, 672–73 (1977).  Plaintiff has not pled a constitutionally protected liberty or

17    property interest is implicated by her not being able to attend school board meetings.

18    As for Plaintiff's argument that Defendants were required to take some action to

19    investigate her complaints, the Due Process clause "is a limitation on state action rather than a

20    guarantee of minimum levels of state protections," therefore a state actor's failure to act, without

21    more, generally will not give rise to a substantive due process claim.  *Murguia v. Langdon*, 61

22    F.4th 1096, 1106 (9th Cir. 2023).

23                                    **3.  Equal Protection**

24    Plaintiff's Count III alleges violation of equal protection and asserts she was treated

25    differently from similarly situated individuals who raised concerns with Oak Run.  ECF No. 1 at

26    5.  Plaintiff does not allege that she was treated differently on the basis of any protected status.

27    Instead, she appears to assert a "class of one" theory and cites *Village of Willowbrook v. Olech*,

28    528 U.S. 562 (2000).  In *Olech*, the Supreme Court found that the plaintiff had stated a class of

7

.1  one equal protection claim, based on facts showing the Village of Willowbrook demanded a 33-

2  foot easement from her as a condition of connecting her property to the water supply, even though

3  the Village only demanded a 15-foot easement from similarly situated owners.

4        Plaintiff pleads her equal protection claim in conclusory terms, and seems to believe she

5  was treated differently by being excluded from public meetings and having her complaints

6  ignored.  Plaintiff does not identify similarly-situated individuals.  "[A] class of one plaintiff must

7  be similarly situated to the proposed comparator in all material respects."  *SmileDirectClub, LLC*

8  *v. Tippins*, 31 F.4th 1110, 1123 (9th Cir. 2022).  With no adequate comparator facts alleged,

9  Plaintiff's class-of-one claim fails.  See *Evans Creek, LLC v. City of Reno*, 2022 WL 14955145,

10  *2 (9th Cir. 2022) ("because Evans Creek has not plausibly pleaded the 'similarly situated'

11  element of its class-of-one claim, its equal protection claim as a whole fails").

12        Whether leave to amend these claims against the Board Defendants should be granted is

13  discussed below.

14        **IV.**    **Livingston's Motion to Dismiss (ECF No. 28)**

15        Livingston argues that the claims against her in her official capacity are barred by the

16  Eleventh Amendment.  ECF No. 28-1 at 4.  Livingston further argues that Plaintiff does not have

17  a Constitutional right to attend school board meetings or to have the school board act on her

18  complaints.  *Id.* at 5.  Livingston contends that Plaintiff does not have a Constitutional right to

19  access school district records, and thus her allegation that Livingston sent her an email denying

20  access fails to state a claim.  *Id.* at 6.  Livingston additionally argues that each of the three counts

21  fails to state a claim for reasons similar to those offered by the other defendants.

22        In *Eaglesmith v Ward*, 73 F.3d 857 (9th Cir. 1995), the Ninth Circuit held that the

23  Mendocino County superintendent of schools was entitled to Eleventh Amendment immunity for

24  claims brought against him in his official capacity.  Plaintiff states that she is suing Livingston in

25  both her individual and official capacities.  ECF No. 1 at 2.  Livingston is immune from damages

26  claims against her in her official capacity.  However, as with the Defendant Board Members,

27  Livingston is not immune from suit for prospective injunctive relief or for damages in her

28  individual capacity.

8

.1        Beyond Eleventh Amendment immunity, Livingston also argues that Plaintiff fails to state

2    a substantive claim against her.  As with the Board Defendants, Plaintiff's allegations against

3    Livingston are thin.  Plaintiff specifically alleges that Livingston defamed Plaintiff and threatened

4    to "destroy" her.  These allegations fail to state a claim for retaliation or a violation of due process

5    or equal protection for largely the same reasons stated above in discussing the Board Defendants'

6    motion to dismiss.  Plaintiff cites *Nunez v. City of Los Angeles*, 147 F.3d 867 (9th Cir. 1998) as

7    purported support for her position.  But *Nunez* held that the kind of "harsh words," "bad-

8    mouth[ing]," and "verbal threat[s]," Plaintiff alleges Livingston employed are insufficient to

9    demonstrate retaliation.  *Id*. at 875.  As *Nunez* pointed out, "It would be the height of irony,

10    indeed, if mere speech, in response to speech, could constitute a First Amendment violation." *Id*.

11    Plaintiff has failed to plead facts stating a plausible cause of action against Livingston.

12        Whether leave to amend these claims against Livingston should be granted is discussed

13    below.

14        **V.        Plaintiff's Motions**

15        Plaintiff has filed four motions that relate to the briefing on the motions to dismiss.

16    Plaintiff seeks to strike portions of Defendants' filings, while also seeking leave of court to file

17    her own supplemental and overlength materials.

18        **A.  Motion to Strike (ECF No. 30)**

19        Plaintiff seeks to strike the Oak Run and Board Members' reply brief contending that it

20    "contains misstatements of fact, legally improper arguments, and misleading characterizations."

21    ECF No. 30 at 2.  Plaintiff's motion contends Defendants raised new legal theories, but fails to set

22    forth the new theories.  In fact, Plaintiff's motion states: "including [Specify Examples of New

23    Legal Theories Introduced]."  ECF No. 30 at 2.  Plaintiff's motion states she is filing copies of her

24    formal complaints as Exhibit A, and then fails to attach them.  The motion lacks merit and, to the

25    extent Plaintiff is just rearguing the merits, it is an improper sur-reply.  As the Seventh Circuit has

26    observed, motions to strike often "serve no purpose except to aggravate the opponent" and

27    "[m]otions to strike disserve the interest of judicial economy."  *Redwood v. Dobson*, 476 F.3d

28    462, 471 (7th Cir. 2007).  The motion is DENIED.

.1

2

### B.  Motion for leave to file Sur-reply (ECF No. 32)

Plaintiff seeks leave to file a sur-reply concerning Oak Run's motion to dismiss (ECF No. 21) and reply brief (ECF No. 25).  Local Rule 230(m) provides that after a reply is filed "no additional memoranda, papers, or other materials may be filed without prior Court approval," subject to limited exceptions concerning where a reply submitted "new evidence," or to bring the Court's attention to a "relevant judicial opinion" that was recently issued.  Plaintiff makes the erroneous argument that the reply briefed raised for the first time the issue of Eleventh Amendment immunity.  ECF No. 32 at 2.  Plaintiff filed her sur-reply concurrently with the motion for leave.  ECF No. 33.  The sur-reply continues the false argument that Oak Run did not raise Eleventh Amendment immunity in its motion.  It clearly did.  *See* ECF No. 21-1 at 4 ("Plaintiff's entire action is barred by the Eleventh Amendment …").  Plaintiff's motion does not demonstrate good cause to file a sur-reply and the sur-reply was filed without prior Court approval in violation of Local Rule 230(m).  However, on this occasion, in consideration of Plaintiff's pro se status, the Court will GRANT the motion and has considered the sur-reply.  The Court will not be so lenient in the future and will not consider any improper sur-replies filed by Plaintiff.

### C.  Motion for leave to file Overlength Brief (ECF No. 36)

Plaintiff seeks permission to exceed the page limitations on her opposition (ECF No. 23) to Oak Run's motion.  Plaintiff files this motion in response to Oak Run's objection to her exceeding the page limit and submitting declarations and other exhibits.  ECF No. 25-1.  Plaintiff's motion is not really seeking an overlength brief, as the brief itself (ECF No. 23) is not overlength.  Rather Plaintiff seeks to file 77 pages of exhibits (ECF No. 23-1).  As a general rule, a court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  While there are exceptions to this general rule, the exhibits Plaintiff now offers were not submitted as part of the complaint, and Defendants object to their consideration.  Plaintiff's motion does not request the Court take judicial notice or demonstrate that the exhibits are subject to judicial notice under Federal Rule of

.1    Evidence 201.  However, Plaintiff's exhibits allow the Court to better evaluate whether leave to

2    amend should be granted, and on that basis Plaintiff's motion is GRANTED.

3        **D.  Motion to Strike (ECF No. 46)**

4        Plaintiff states she wishes the Court to strike "portions" of Livingston's reply brief.  ECF

5    No. 46 at 1.  Plaintiff contends the reply contains new arguments concerning exhaustion of

6    administrative remedies and standing.  *Id.* at 2-3.  This motion is nonsensical, because it was filed

7    on January 23, 2025, and Livingston had not yet filed a reply.  Livingston's reply brief was filed

8    on January 30, 2025.  *See* ECF No. 57.  The motion is DENIED.

9        **E.  Motion for a Gag Order (ECF No. 62)**

10        On February 5, 2025, Plaintiff filed a Motion for a Gag Order "to prohibit" Livingston and

11    "all parties from making public statements related to this ongoing litigation."  ECF No. 62 at 1.

12    The Court initially stayed this motion pending resolution of the Motions to Dismiss.  ECF No. 64.

13    However, the Court now summarily recommends denial of that motion.

14        Plaintiff complains about allegedly "defamatory and false statements" made by Livingston

15    in two publications.  The first is an article entitled "Why Can't Oak Run Elementary School

16    District Have Nice Things," published by *A News Café* on January 28, 2025.[1]  That piece, which

17    was not authored by Livingston but quotes her occasionally, describes in excruciating detail the

18    long-running conflict between Lucero and her supporters on one side and Livingston and Oak

19    Run on the other, including an allegedly false report that Lucero made about Livingston's

20    husband being a convicted sex offender.  ECF No. 62 at 7-24.  The second publication is an

21    article entitled "Superintendent Terminated as Fiscal Crisis Puts Oak Run Elementary School

22    District at Risk," published by the *Shasta Scout* on January 30, 2025.  That piece does not appear

23    to mention Lucero at all.

24        A court may issue a gag order only if the moving party establishes that: (1) the activity

25    restrained poses either a clear and present danger or a serious and imminent threat to a protected

26    competing interest; (2) the order is narrowly drawn, and (3) less restrictive alternatives are not

27

28    [1]  *A News Café* is an online news magazine.

.1   available.  *Levine v. U.S. Dist. Ct. for the Dist. of Cal*., 764 F.2d 590, 595 (9th Cir. 1985).

2   Plaintiff argues that Livingston's public statements prejudice potential jurors, undermine the

3   integrity of the judicial process, and serve to retaliate against plaintiff for exercising her

4   constitutional rights as a whistleblower.  ECF No. 62 at 2.  That is not a serious argument on the

5   current record.  The publications in question focus on Shasta County news and are presumably

6   read primarily by Shasta County audiences.  Any jury in this case would be drawn from

7   throughout the counties covered by the Sacramento Division (Siskiyou, Modoc, Trinity, Shasta,

8   Lassen, Tehama, Plumas, Glenn, Butte, Colusa, Sutter, Yuba, Sierra, Nevada, Yolo, Placer, El

9   Dorado, Solano, Sacramento, Amador, Alpine, San Joaquin, Mono, Stanislaus, and Calaveras).

10   *See* E.D. Cal. General Order 680.  There is no reason to believe that this jury pool could be

11   influenced by local media focused on Shasta County.  While there are many other reasons to deny

12   Plaintiff's Motion for a Gag Order, the motion fails because the allegedly problematic statements

13   are simply not disseminated widely enough to present any "clear and present danger or a serious

14   and imminent threat" to Plaintiff's rights to a fair proceeding.  *Levine*, 764 F.2d at 595.

15       **VI.    Leave to Amend**

16       The Court has considered Plaintiff's pro se status and whether she should be granted leave

17   to amend.  *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) ("[a] district court should not

18   dismiss a pro se complaint without leave to amend unless it is absolutely clear that the

19   deficiencies of the complaint could not be cured by amendment.").  In particular, the Court has

20   considered the voluminous additional narrative information and exhibits that Plaintiff submitted

21   in opposition to the Board Defendants' Motion to Dismiss.  ECF No. 23.

22       That information and those exhibits show that Plaintiff could, in an amended complaint,

23   and in addition to allegations made in the initial Complaint, allege as follows:  In January 2023,

24   Plaintiff "began documenting irregularities in school operations, including inconsistencies in

25   financial reporting and student attendance records."  ECF No. 23-1 at 75.  Plaintiff submitted

26   multiple complaints to the Board over the course of 2023.  *Id*. at 75.  In or around November

27   2023, Plaintiff filed a public records act request with Oak Run.  *Id*. at 3.  On December 2, 2023,

28   Livingston called Plaintiff and asked her to come to Oak Run Elementary School to "retrieve

documents." *Id*. at 2.  They agreed to meet on December 4 at 3:00 p.m.  In fact, Livingston had already petitioned for, and obtained, a temporary restraining order ("TRO") from Shasta County Superior Court that prohibited Plaintiff from engaging in a range of conduct and from coming within 150 yards of Livingston, the school, and other locations associated with Livingston.  *Id*. at 19-24.

On December 4, Plaintiff arrived at the school as planned.  "[F]our school staff members" met her and "forcibly handed her a copy of a workplace violence restraining order and temporary order [sic,]" which was "slammed onto Plaintiff's binder, which she was holding close to her chest, with such force that it hit her chest forcefully." *Id*. at 2-3.  That same day, Plaintiff filed with the Board "six formal complaints regarding misconduct and retaliation" by Livingston.  *Id*. at 1.  While it is not clear if this also occurred on the same day, Plaintiff also states that in December 2023, Livingston filed a false police report against her, which resulted in a school "lockdown incident." *Id*. at 3.  Plaintiff accuses Livingston of filing multiple false police reports against her (ECF No. 23 at 11), and, on December 12, issuing a letter barring Plaintiff from school grounds (ECF No. 23-1 at 7, 9).[2]

Plaintiff further states that on November 28, 2024, she filed a criminal complaint with the Shasta County Sheriff, accusing Livingston of "document falsification and retaliatory threats." ECF No. 23-1 at 4.  Plaintiff states that Livingston was terminated from her position in December 2024, "due to ongoing financial misconduct and administrative failures, corroborating Plaintiff's earlier complaints." *Id*. at 76.

With these additional possible alleged facts in mind, as to amendment, the Court recommends as follows:

**Oak Run:**  Oak Run should be dismissed without leave to amend.  As explained above, Oak Run has Eleventh Amendment immunity.  Moreover, it is not a "person" for purposes of §1983.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989).  Amendment would be

---

[2]  To provide additional context, in the December 12 letter to Plaintiff, Livingston stated "that there have been two incidents in which you have visited the office and significantly disrupted the productivity of both myself and other office personnel." ECF No. 23-1 at 7.

futile, as leave to amend is futile where immunity forecloses a plaintiff's claim as a matter of law. *Valencia v. Juan*, 2024 WL 1007234 at *2 (E.D. Cal. March 8, 2024).

**Board Members:**  As explained above, the Board Members also have Eleventh Amendment immunity from damages in their official capacities, but can be sued for prospective injunctive relief and, in their individual capacities, damages.  However, Plaintiff should not be granted leave to amend.  Her opposition filings demonstrate that there are no facts she could plead that would state a cause of action against the Board Members for retaliation, a due process violation, or an equal protection violation.  Those filings merely repeat her complaints about the Board failing to act on her complaints.  Amendment would be futile.  *See Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) ("Where the legal basis for a cause of action is tenuous, futility supports the refusal to grant leave to amend.").

**Livingston:**  Plaintiff's retaliation and equal protection claims against Livingston should be dismissed with leave to amend.  Plaintiff's due process claim against Livingston should be dismissed without leave to amend.

Retaliation: As explained above, the Complaint fails to state a claim for retaliation because it does not show that a person of ordinary firmness would have been chilled from engaging in further First Amendment activity under the facts alleged.  In Plaintiff's opposition filings, she states that Livingston, in addition to the actions already alleged in the Complaint, filed false police reports against her, sought a baseless TRO, and issued a letter barring Plaintiff from school grounds.  Plaintiff's opposition filings also state that school staff assaulted her in the course of serving her with the TRO, though there is nothing to suggest that Livingston directed the TRO to be served in an assaultive manner.[3]

---

[3]  Plaintiff claims that she was "assaulted by a staff member on the premises of the school." ECF No. 47.  It appears this alleged assault involved the December 4, 2023 incident at Oak Run Elementary School where "four school staff members" "forcibly handed her a copy of a workplace violence restraining order and temporary order [sic,]," which was "slammed onto Plaintiff's binder, which she was holding close to her chest, with such force that it hit her chest forcefully."  ECF No. 23-1 at 2-3

.1          There is little case law as to whether such conduct is sufficient to establish the chilling

2    effect necessary to make out a retaliation claim.  However, the case law that does exist suggests

3    that, depending on the other relevant circumstances, obtaining a TRO based on false allegations

4    may suffice.  In *Toler v. Paulson*, 551 F. Supp. 2d 1039 (E.D. Cal. 2008), after the plaintiff

5    publicly criticized the Solano County District Attorney's Office, a DA investigator allegedly filed

6    a false petition for a TRO which "prohibited plaintiff from coming within 500 yards of

7    Government Center, a place to which plaintiff allegedly needed access in order to perform his

8    work" as a bail bondsman and private investigator.  *Id*. at 1044.  This Court denied the

9    defendants' request for qualified immunity on the plaintiff's retaliation claim, reasoning as

10   follows: "Even if the mere act of filing an allegedly false petition would not be sufficiently

11   injurious to deter a person of ordinary firmness from speaking, certainly the restriction of freedom

12   of movement imposed by a temporary restraining order (issued as a result of the petition) would."

13   *Id*. at 1048.  *See also Fielder v. Murphy*, 359 F. Supp. 2d 1055 (D. Haw. 2005) (affirming jury

14   verdict in the plaintiff's favor on a retaliation claim where the retaliatory action was obtaining a

15   TRO against the plaintiff).

16          The facts in *Toler* can be meaningfully distinguished from the additional facts Plaintiff

17   asserts.  In *Toler*, the plaintiff could not do his job in light of the TRO.  That is not the case here,

18   because Plaintiff does not allege that she is or was a school employee.  Nor does Plaintiff allege

19   that she is or was a parent of a child at the school.  Thus, the TRO in the instant case did not

20   affect Plaintiff's life functions in the same way that the TRO affected the plaintiff in *Toler*.

21   However, in light of the fact that Plaintiff alleges Livingston falsely sought and obtained the

22   TRO, made false police reports against Plaintiff, and sought to intimidate Plaintiff in other ways,

23   the undersigned cannot find that it is absolutely clear that further amendment of the retaliation

24   claim would be futile.  *See also Greisen v. Hanken*, 925 F.3d 1097, 1114 (9th Cir. 2019) (speech

25   may support a First Amendment retaliation claim where the speech is part of a "campaign of

26   harassment designed to burden the plaintiff's protected expression" or when it "intimat[es] that

27   some form of punishment or adverse regulatory action would follow").

28   ////

.1         <u>Equal Protection</u>:  As for Plaintiff's equal protection class-of-one claim, her opposition

2   papers merely make conclusory allegations that she was treated differently than similarly situated

3   people.  But she does not identify who those similarly situated people are or how they were

4   treated differently.  While the undersigned doubts that Plaintiff can allege facts that could make

5   out a class-of-one claim against Livingston, she should be allowed to attempt to do so.

6         <u>Due Process</u>:  Plaintiff's due process claim against Livingston should be dismissed with

7   prejudice, as Plaintiff's opposition demonstrates that she could plead no facts demonstrating a due

8   process violation.

9         <u>Qualified Immunity and Leave to Amend</u>:  Livingston also seeks dismissal on qualified

10   immunity grounds.  Rather than determine whether amendment would be futile because

11   Livingston would be entitled to qualified immunity under the hypothetical facts of an amended

12   complaint, it would be best to evaluate qualified immunity arguments on the record of whatever

13   precise facts Plaintiff might allege in a future pleading.  *See, e.g., Beirne v. Cty. of Ventura*, No.

14   2:20-cv-03428-SB-AGR2021 WL 4434342, at *2 (C.D. Cal. July 13, 2021) ("Courts regularly

15   conclude that it is premature to grant or deny a qualified immunity defense on the merits after

16   allowing leave to add allegations about the purported constitutional violation."); *Miranda v.*

17   *Madden*, No. 3:19-cv-01605-LAB-RBM, 2021 WL 1700352, at *6 (S.D. Cal. Apr. 28, 2021) ("a

18   qualified immunity analysis is premature at this stage as Plaintiff's FAC fails to plausibly allege

19   any constitutional violation"); *Wheeler v. Marengo*, No. 18-CV-360-AJB(WVG), 2019 WL

20   5963914, at *6 (S.D. Cal. Nov. 13, 2019) (after leave to amend, a motion to dismiss based on

21   qualified immunity is better "denied without prejudice subject to full consideration at a later date

22   on a more developed record" or "at least until Plaintiff's claims are more concretely stated");

23   *Phommathep v. Cty. of Tehama*, No. 2:18-cv-02916-TLN-DMC, 2020 WL 4480379, at *11 (E.D.

24   Cal. Aug. 4, 2020) ("If and when Plaintiffs successfully amend to allege a constitutional

25   violation, Defendants are free to raise qualified immunity.").

26         To summarize, the undersigned is recommending leave to amend only as to Livingston

27   and only as to Plaintiff's retaliation and equal protection class-of-one claims.  Moreover, the

28   undersigned is recommending that amendment be allowed only against Livingston for damages in

her individual capacity and for prospective injunctive relief in her official capacity, bearing in mind that Livingston's reported removal from her position may have mooted any claim for prospective injunctive relief against her.

**VII.    CONCLUSION**

**IT IS HEREBY ORDERED:**

**1.**  Plaintiff's Motions to Strike (ECF Nos. 30 & 46) are DENIED;

**2.**  Plaintiff's Motion to file Sur-reply (ECF No. 32) is GRANTED; and

**3.**  Plaintiff's Motion for Overlength Brief (ECF No. 36) is GRANTED.

**IT IS HEREBY RECOMMENDED:**

**1.**  The School Board Defendants' Motions to Dismiss (ECF No. 21) be GRANTED without leave to amend;

**2.**  Defendant Livingston's Motion to Dismiss (ECF No. 28) be GRANTED, and that the action be dismissed with leave to amend only as to the retaliation and class-of-one claims; and

**3.**  Plaintiff's Motion for a Gag Order (ECF No. 62) be DENIED without prejudice.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, either party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: May 2, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

17